POSTED ON WEBSITE

NOT FOR PUBLICATION

```
┌─────────────────────────────┐
│           FILED             │
│                      ᐯᏳ     │
│        JAN 3 0 2009         │
│                             │
│ UNITED STATES BANKRUPTCY COURT │
│ EASTERN DISTRICT OF CALIFORNIA │
└─────────────────────────────┘
```

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )        Case No. 04-12777-B-7
                                         )
                                         )
Arthur Myunghoon Park,                   )
                                         )
          Debtor.                        )
_____ )

### MEMORANDUM DECISION REGARDING APPLICATION
### FOR COMPENSATION OF TRUSTEE'S ATTORNEY

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Patrick M. Kavanagh, Esq., appeared in his capacity as applicant and attorney for the chapter 7 trustee.

Arthur Myunghoon Park appeared *in propria persona*.

Before the court is an application for professional fees (attorney fees and costs) (the "Application") filed by Patrick M. Kavanagh, Esq. ("Kavanagh"), who was authorized to perform legal services for himself as the chapter 7 trustee. Kavanagh asks for an award of attorney fees in the amount of $78,707 and reimbursement for costs in the amount of $431. The debtor, Arthur M. Park (the "Debtor") opposes the Application and asks that Kavanagh be surcharged for alleged "damages" incurred through Kavanagh's administration of the estate (the "Objection").[1] The court has independently reviewed

_____

[1]Until June 5, 2008, the Debtor had been represented by counsel. Yet, the Debtor filed an extensive and detailed opposition to Kavanagh's fees *in propria persona*. The Debtor accuses his own attorney of being incompetent, and "too weak and timid to stand up for his client." The court can only infer from those comments that there was a material disagreement and/or breakdown in communication between the Debtor and his counsel regarding administration of the case.

1 Kavanagh's fees for compliance with 11 U.S.C. § 330. Based thereon, the Application

2 will be approved in part and denied in part. For reasons set forth below, the Debtor's

3 Objection is not procedurally proper and will be overruled.

4 This memorandum decision contains the court's findings of fact and conclusions

5 of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

6 contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has

7 jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 330[2] and General

8 Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This

9 is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

10 **Background and Findings of Fact.**

11 In much of life, there is an easy way and a hard way to execute almost everything

12 that comes before us. With regard to the Debtor, this case was a classic example of the

13 latter. The bankruptcy commenced as a voluntary petition under chapter 7 in March

14 2004. It was a "skeletal" petition filed without the required schedules and statement of

15 financial affairs. The Debtor did not file those documents until after the court issued an

16 order to show cause regarding dismissal for his failure to do so. The schedules showed

17 that the Debtor owned a house valued at $1.1 million (the "House") and a membership in

18 Seven Oaks Country Club valued at $19,250. Virtually all of the other scheduled assets

19 were either exempted or not available for liquidation by the Trustee. The Debtor

20 contended that two expensive automobiles registered to the Debtor's nonfiling spouse,

21 Ginsook Park, were her separate property not subject to administration by the Trustee.

22 The House was scheduled as being subject to three deeds of trust in favor of Wells

23 Fargo Bank and the U.S. Small Business Administration, securing debts totaling

24

25

26 [2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy
Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-

27 9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20,

28 2005, 119 Stat. 23.

approximately $1,025,000 (later amended to approximately $1,005,000). The schedules showed the House was also encumbered by an abstract of judgment in favor of David A. Gill, the court appointed receiver for Physician's Indemnity Cooperative Corporation and Physician's Indemnity Trust, securing a State court judgment in the amount of $124,532.85 (later amended to $88,680). The House was also encumbered by a deed of trust in favor of the Debtor's sister, Young Sook Hong, securing a purported debt in the amount of $12 million (the "Hong Trust Deed"). Schedule I reflected a monthly "wage garnishment" deduction in favor of Young Sook Hong in the amount of $1,222.37.

The Debtor is a self-employed licensed physician. He only scheduled three unsecured creditors. Two creditors were listed as holding claims relating to medical malpractice litigation with a value "unknown." One of those creditors was Theresa Martin who had filed a lawsuit against the Debtor in the Fresno County Superior Court. The other was her attorney, Elizabeth A. Henderson. The Debtor listed one unsecured credit card debt in the amount of $15,000.

Kavanagh was appointed to serve as the chapter 7 trustee (the "Trustee").[3] At the meeting of creditors, the Trustee determined that the House could have value in excess of the undisputed liens and he requested documents relating to the Hong Trust Deed. The Trustee also determined that the Debtor had not scheduled all of his assets, including a tax refund in the amount of $26,335. The Debtor failed to produce the tax refund and the documents requested by the Trustee and Kavanagh had to file a motion to compel turnover. Before the hearing on that motion, the Debtor converted this case to chapter 13 to avoid complying with the Trustee's turnover demand.

---

[3]Kavanagh wore two hats in this case. He served as both the Trustee and the Trustee's attorney. Kavanagh has provided the court with time records for all of his activities in each capacity. Kavanagh is referred to herein as both Kavanagh and Trustee. In its use of these terms, the court has attempted to distinguish which capacity, Trustee or attorney, the discussion refers to. The court's use of these terms is not intended to be a finding of fact as to what capacity Kavanagh served. The court is satisfied by Kavanagh's billing records that he has reasonably allocated and divided his time between services rendered as Trustee and attorney.

3

1    The chapter 13 trustee promptly filed a motion to reconvert the case to chapter 7
2  because the Debtor's scheduled secured debt, totaling almost $13.1 million, made the
3  Debtor ineligible for chapter 13 relief under § 109(e). The Debtor initially opposed the
4  motion on unstated grounds, but subsequently consented to reconvert the case back to
5  chapter 7. Kavanagh was reappointed to serve as the Trustee. The Debtor then brought a
6  motion to dismiss the case which was opposed by the Trustee and virtually all of the
7  creditors. That motion was denied. The Trustee had to refile the turnover motion which
8  the Debtor opposed.

9    Looking at the claims register, only six claims were filed in this case. Young Sook
10 Hong filed a claim for $12 million secured by the House. That claim was eventually
11 withdrawn after the Trustee filed an adversary proceeding against Ms. Hong. Wells
12 Fargo Bank filed a claim for $99,702 secured by the House. David A. Gill filed a claim
13 for $151,160.91 secured in part by the House with the balance classified as unsecured.
14 Theresa Martin filed an unsecured medical malpractice claim in the amount of $1 million.
15 Her attorney, Elizabeth A. Henderson, filed an unsecured claim for $200,000 relating to
16 an award of attorney fees in Ms. Martin's state court litigation.

17    After the case was reconverted to chapter 7, the Debtor did as little as possible to
18 cooperate with the Trustee. Indeed, he actively resisted the Trustee in virtually every
19 aspect of case administration. He failed to produce the records requested by the Trustee,
20 including documents relating to the Hong Trust Deed. Over the course of the case, the
21 Trustee had to bring multiple turnover motions. All of them were opposed by the Debtor.
22 The Debtor failed to appear for and properly conclude the meeting of creditors mandated
23 by § 341 of the Bankruptcy Code. The court docket shows that the Trustee continued the
24 § 341 meeting 40 (forty) times before it was finally concluded on August 14, 2006, two
25 and one-half years after the case was filed. According to the Trustee's reports filed after
26 each continued meeting, the Debtor failed to appear for any continued creditor meeting
27 after October 31, 2005.

28    Eventually Kavanagh had to file an adversary proceeding against Young Sook

4

1  Hong to avoid the Hong Trust Deed as a fraudulent conveyance. When the Debtor failed
2  to produce the requested documents, Kavanagh also filed two adversary proceedings (1)
3  against the Debtor objecting to his discharge, and (2) against Ginsook Park, to quiet title
4  and for relief relating to her interest in assets which the Debtor contended was Ms. Park's
5  separate property. Finally, Kavanagh had to file another adversary proceeding against the
6  Debtor and Mrs. Park for turnover of the House alleging that they had refused to
7  cooperate with the Trustee's efforts to sell the House. Ultimately, after contentious
8  litigation, the parties stipulated and agreed to (1) entry of a judgment denying the
9  Debtor's discharge, and (2) allow the House to be sold free and clear of the Hong Trust
10 Deed (although the Debtor subsequently objected to the sale once it was brought before
11 the court for approval).

12     In early 2005, the Debtor objected to Theresa Martin's and Elizabeth A.
13 Henderson's claims and filed a motion for relief from stay to let Martin's malpractice
14 litigation proceed in the state court. The objection to Elizabeth A. Henderson's claim was
15 sustained and the objection to Ms. Martin's claim was overruled. The Debtor appealed
16 that decision, but failed to prosecute the appeal. It was later dismissed. The court
17 subsequently granted relief to let Ms. Martin pursue her state court litigation. When the
18 Trustee later negotiated a settlement of Ms. Martin's bankruptcy claim, in September
19 2006, the Debtor again objected. When the settlement was approved, the Debtor filed
20 another appeal. The Trustee had to hire special counsel to respond to the appeal; it was
21 later dismissed.

22     Eventually, the Trustee sold the House for $1,705,000 and the disputed claims
23 were settled. The Debtor opposed the sale. As Trustee, Kavanagh filed his Trustee's
24 Final Report and Application for Compensation on August 5, 2008 (the "TFR"). The
25 TFR shows that the Trustee gathered assets totaling $1,732,082.51 and made
26 disbursements to secured creditors in excess $1,129,000. At the time, the Trustee was
27 holding $602,418 in undisbursed proceeds. Kavanagh kept detailed time records to
28 document his activities as Trustee. Those time records show that the Trustee spent 277.9

hours administering this case.  The Trustee requested compensation based on the statutory formula in § 726 in the amount of $72,962.48 and reimbursement for costs in the amount of $5,031.20.  At the hearing, the Debtor expressly stated that he did not object to the TFR, or to the request for Trustee's compensation.  Accordingly, the TFR and all requests for compensation except Kavanagh's attorney fees were approved.[4]

**Kavanagh's Fee Application.**

Kavanagh filed his First and Final Application for Allowance of Attorney Fees on July 21, 2008.  The Debtor's Objection is directed at that Application and the matter was heard with the TFR.  Kavanagh requests compensation for 446.9 hours of attorney/paralegal time in the amount of $78,707.  Kavanagh has accounted for this time chronologically and has meticulously allocated the time into nine categories as follows:

| Categories | Hours | Amount |
|---|---|---|
| Asset Analysis and Investigation: | 4.2 | $    721.00 |
| Asset Disposition: | 9.5 | $ 2,111.50 |
| Case Administration: | 37.5 | $ 7,616.00 |
| Claims Administration and Objection: | 42.6 | $ 9,542.50 |
| Employment and Fee Applications: | 6.6 | $ 1,462.00 |
| Litigation/Discovery | 158.8 | $21,900.50 |
| Litigation/House | 77.0 | $13,951.50 |
| Litigation/Discharge | 72.1 | $13,869.00 |
| Litigation/Other | 38.6 | $ 7,533.00 |
| Total: | 446.9 | $78,707.00 |

**The Debtor's Objection.**

The various allegations, inferences, and arguments both ways are fully set forth in Kavanagh's Application, the TFR, the Debtor's Opposition, and Kavanagh's Reply

---

[4]The court also approved requests for compensation by the accountant, special counsel to defend the Debtor's appeals, and the two real estate agents involved in sale of the House.

1  thereto.  For the sake of brevity and sanity, those arguments will not be fully restated
2  here.

3      In summary, the Debtor contends that the Trustee was dilatory and negligent in his
4  administration of the bankruptcy estate and that the Debtor has been damaged by, *inter*
5  *alia*, the accrual of interest and costs which had to be paid from the estate.  The Debtor
6  asks the court to surcharge Kavanagh the sum of $60,000 for interest paid to David A.
7  Gill and "unnecessary" legal fees.  The Debtor also contends that the estate was damaged
8  in the amount of $139,679.67 based on the Trustee's handling of the sale of the House.
9  The Debtor asks that Kavanagh's fees be disallowed in their entirety.  In response,
10 Kavanagh argues that the delays and problems with administration were caused by the
11 Debtor.  Kavanagh contends, *inter alia*, that the Debtor was obstreperous, that he failed in
12 his duties, and that the delays and additional costs were a direct result of the Debtor's
13 conduct.

14      **Issue.**

15      This is a "surplus" asset estate.  All of the creditors holding allowed claims have
16 been or will be paid in full upon closure of the case.  The Trustee is holding a significant
17 amount of surplus funds which will be returned to the Debtor at the conclusion of the
18 case.[5]  Therefore, this is a two-party dispute.  The Debtor is the only person to benefit
19 from any fees which the court may disallow to Kavanagh based on the Objection.

20      The Debtor's Objection raises two issues.  The first issue is whether Kavanagh
21 should be held personally liable to the Debtor based on allegations that he negligently
22 failed, in this capacity as the Trustee, to take certain actions and diligently administer the
23 estate.  The second is whether Kavanagh's services, in his capacity as the Trustee's
24 attorney were reasonable, necessary and beneficial to the administration of the bankruptcy
25 estate.

26

27

28   [5]On January 8, 2009, this court, with the Trustee's concurrence, authorized the Trustee to
     return $250,000 to the Debtor for personal reasons not related to administration of the case.

7

1  **Analysis and Conclusions of Law.**

2  **Applicable Law.**

3       A chapter 7 trustee's duties pertinent to this analysis are prescribed in § 704(1) &

4  (4). The trustee *shall* investigate the debtor's financial affairs, collect the property of the

5  estate, reduce it to money, distribute the money to the creditors, and close the estate "as

6  *expeditiously* as is compatible with the best interests of parties in interest." (emphasis

7  added.) "[A] chapter 7 trustee voluntarily assumes a statutory duty under § 704(1) to

8  collect and reduce the property of the estate for which trustee serves, and close such estate

9  as expeditiously as is compatible with the best interests of parties in interest." *In re C.*

10  *Keffas & Son Florist, Inc.*, 240 B.R. 466 (Bankr. E.D.N.Y. 1999).

11       There is an undeniable tension between a trustee's duty to both administer the

12  estate expeditiously, and to maximize recovery from the liquidation of assets. "In short, it

13  is the trustee's duty to both the debtor and the creditors to realize from the estate all that is

14  possible for distribution among the creditors." 6 *Collier on Bankruptcy*, (15th Ed.

15  Revised), ¶ 704.02[3] at 704-12. The trustee's duty to expeditiously close the estate has

16  been described by courts as the trustee's "main" duty under § 704. *In re Riverside-Linden*

17  *Inv. Co.*, 85 B.R. 107, 111 (Bankr. S.D. Cal. 1988), *aff'd.*, 99 B.R. 439 (9th Cir. BAP

18  1989), *aff'd.*, 925 F.2d 320 (9th Cir. 1991) (citation omitted).

19       Conversely, the Bankruptcy Code also imposes affirmative duties of disclosure and

20  cooperation on a debtor under § 521(a), as supplemented by Rule 4002. *In re Neese*, 137

21  B.R. 797, 800 (Bankr. C.D. Cal. 1992). In the administration of the estate, the nature of

22  the debtor's cooperation and the trustee's obligations are coextensive. A debtor must

23  cooperate with the trustee as needed so that the trustee is able to perform his or her duties

24  under the Bankruptcy Code. When the trustee calls upon the debtor for assistance in the

25  performance of his or her duties, debtor must respond and cooperate with the trustee to

26  the best of his/her ability. *Id.* at 801. "[L]ack of cooperation, in the past, has been

27  characterized as a 'bankruptcy crime'." *In re McDonald*, 25 B.R. 186, 189 (Bankr. Ohio

28  1982). Courts have permitted trustees to surcharge exempt property for administrative

8

1    costs resulting from the debtor's failure to cooperate with the trustee. *In re Price*, 384
2    B.R. 407, 411 (Bankr. E.D. Va. 2008). Where a debtor fails abysmally to fulfill this
3    duties, making extra work and costs for the Trustee, he cannot be heard to complain that
4    the administration of the case was unduly delayed or expensive.

5         When the chapter 7 trustee employs an attorney to work for the bankruptcy estate,
6    the standard for compensation of that attorney is defined in § 330(a). Section
7    330(a)(1)(A) authorizes the court to award "reasonable compensation for actual,
8    necessary services rendered" by the attorney. Section 330(a)(1)(B) authorizes
9    "reimbursement for actual, necessary expenses." Section 330(a)(2) authorizes the court to
10   "award compensation that is less than the amount of compensation that is requested."
11   The court must find that the compensation is reasonable. Section 330 (a)(3) requires the
12   court to consider "the nature, the extent, and the value of such services, taking into
13   account all relevant factors." Those "relevant factors" include the time spent, the rates
14   charged, and whether the services "were necessary to the administration of, or beneficial
15   at the time at which the service was rendered toward the completion of" the bankruptcy
16   case.

17        Even if the court finds that the services billed by an attorney are "actual," meaning
18   that the fee application reflects time entries properly charged as legal services, the
19   attorney must still demonstrate that the work performed was necessary and reasonable.
20   *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (In re Puget Sound*
21   *Plywood)*, 924 F.2d 955, 958 (9th Cir. 1991). An attorney employed under § 327 must
22   exercise good billing judgment with regard to the legal services undertaken. *Id.* at 959.
23   The court's authorization to employ an attorney to work in a bankruptcy case does not
24   give that attorney "free reign [sic] to run up a [legal fee] tab without considering the
25   maximum probable [as opposed to possible] recovery." *Id.* at 958. Prior to working on a
26   legal matter, the attorney is obligated to consider:
27   / / /
28   / / /

9

1    (a) Is the burden of the probable cost of legal services disproportionately
     large in relation to the size of the estate and maximum probable recovery?

2

3    (b) To what extent will the estate suffer if the services are not rendered?

4    (c) To what extent may the estate benefit if the services are rendered and
     what is the likelihood of the disputed issues being resolved successfully?

5    *Id.* at 959.

6        An attorney employed under § 327 is not held to guarantee the result of those legal

7    services. However, the attorney must demonstrate that the legal services billed to the

8    bankruptcy estate were "reasonably likely to benefit the estate when the services were

9    rendered." §§ 330(a)(3)(A) and (a)(4)(A)(ii)(I); *Roberts, Sheridan & Kotel, P.C. v.*

10   *Bergen Brunswig Drug Company (In re Mednet)*, 251 B.R. 103, 108 (9th Cir. 2000). "A

11   bankruptcy court also must examine the circumstances and the manner in which services

12   are performed and the results achieved in order to arrive at a determination of a

13   reasonable fee allowance." *Id.* When a cost benefit analysis indicates that the trustee and

14   his professionals are the only parties likely to benefit from the professional services, then

15   "the service is unwarranted and a court does not abuse its discretion in denying fees for

16   those services." *Id.* at 109.

17       The bankruptcy court has an independent duty to review the reasonableness of a

18   professional's fees, even when the trustee who employed that professional does not

19   object. *In re Montgomery Drilling Co.*, 121 B.R. 32, 35-36 (Bankr. E.D. Cal. 1990).

20   **Surcharge of Kavanagh's Attorney Fees.**

21       When a chapter 7 trustee negligently fails to perform his duties under § 704, the

22   court may hold the trustee liable and surcharge the trustee for the value of the loss to the

23   estate. *In re Rollins*, 175 B.R. 69, 74-78 (Bankr. E.D. Cal. 1994)(Trustee held to be

24   personally liable for his failure to protect the estate's interest in the debtor's inheritance

25   and for unreasonably relying upon the debtor's promise to turn over information about a

26   pending probate proceeding).

27       The trustee can be surcharged for damage to the bankruptcy estate even though he

28   successfully prosecutes an action to deny the debtor's discharge after the assets are lost.

10

*Id.* at 76-77. A chapter 7 trustee cannot be held liable for mistakes in judgment where discretion is allowed. However, he can be held liable for both intentional and negligent violations of duties imposed upon him by law. *United States v. Aldrich (In re Rigden),* 795 F.2d 727, 730 (9th Cir. 1986).

Here, the Debtor contends that the Trustee should have administered the estate differently and that the estate ultimately incurred significant costs as result of the Trustee's actions. The Debtor does not make that argument on behalf of the creditors because this is a surplus-asset estate. All creditors will see their allowed claims paid in full. Indeed, the Debtor makes that argument on behalf of himself. The Debtor contends that he has been personally damaged because the amount of surplus funds he will receive has been diminished. This Objection and prayer to surcharge Kavanagh's fees is actually a personal charge against Kavanagh for the recovery of damages. The Debtor's request for a surcharge suffers from three significant procedural defects.

First, the Debtor's complaints are directed at Kavanagh both as the Trustee and as Trustee's attorney without differentiation. However, the nature of the complaints appears to be based on the way in which the Trustee administered the estate, not the actual legal services rendered as the Trustee's attorney. The Debtor fails to articulate any errors which Kavanagh made in the performance of his duties as Trustee's counsel. Further, he fails to explain why many of his objections were not raised earlier in the case, at a time when questions about case administration could have been properly considered. To the extent that the Debtor did raise objections to various matters, such as the settlements with David A. Gill and Theresa Martin, those rulings are now final and will not be revisited. Any surcharge for failure to administer the bankruptcy estate should be directed at the Trustee, not his attorney. As noted above, the Debtor did not object to the Trustee's request for compensation under § 726 and that compensation has already been approved as part of the TFR.

Second, the Debtor cites numerous instances of alleged bias, mismanagement of the estate, and inappropriate conduct by the Trustee. None of those arguments are

11

1 supported by admissible evidence.[6]  It would be wholly inappropriate for this court to
2 hold Kavanagh liable to the Debtor by surcharging his legal fees without solid evidentiary
3 support.

4        Third, the relief which the Debtor seeks here must be prosecuted through an
5 adversary proceeding.  Federal Rule of Bankruptcy Procedure 7001(1) requires that any
6 proceeding to recover money be brought as an adversary proceeding.  An adversary
7 proceeding under Rule 7001 is essentially indistinguishable from a civil action under the
8 Federal Rules of Civil Procedure.  *See* Christopher Klein, *Bankruptcy Rules Made Easy*
9 *(2001):  A Guide to the Federal Rules of Civil Procedure that Apply in Bankruptcy*, 75
10 Am. Bankr. L.J. 35, 38 Winter 2001).

11        In contrast, a contested matter under Federal Rule of Bankruptcy Procedure 9014
12 is a motion procedure susceptible of more expeditious resolution than an adversary
13 proceeding.  In particular, the pleading rules that entail complaint, answer, counterclaim,
14 crossclaim, and third-party practice are dispensed with in favor of a simple motion
15 procedure.  *In re Van Ness*, 2009 WL ___ (J. Klein) (Bankr. E.D. January 23, 2009),
16 *citing Johnson v. TRE Holdings LLC (In re Johnson)*, 346 B.R. 190, 195 (9th Cir. BAP
17 2006); *Khachikyan v. Hahn (In re Khachikyan)*, 335 B.R. 121, 125-26 (9th Cir. BAP
18 2005); *GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 660 (9th Cir.
19 BAP 1999); *United States v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684, 690 (9th Cir.
20 BAP 1996) (concurring op.); Klein, 75 Am. Bankr. L.J. at 40-41.

21        An application for approval of professional fees greater than $1,000 is a Rule 9014

23        [6]The Debtor attached copies of six documents to his Objection, but they are not properly
24 authenticated and they do not establish any negligence or wrong doing on the Trustee's part.  The
first three exhibits relate to the Debtor's complaints about his own attorney.  Exhibit four is just a
25 copy of an order from this court's docket granting relief from stay to litigate the medical
malpractice action filed by Theresa Martin.  The fifth exhibit is a copy of a declaration from
26 Theresa Martin's attorney which Kavanagh filed in the record in support of a compromise of Ms.
Martin's claim.  Based on this document, the Debtor accuses Kavanagh of engaging in ex parte
27 communication with Ms. Martin's attorney.  The sixth is a copy of what appears to be the docket
28 from Theresa Martin's state court litigation.  The sixth exhibit is not referenced in the Objection.

1   contested matter.  Rule 2002(a)(6) & 2016.  It is settled that a Rule 9014 motion cannot

2   be used to circumvent the requirement of an adversary proceeding.  *Bear v. CoBen (In re*

3   *Golden Plan of Cal., Inc.)*, 829 F.2d 705, 711-12 (9th Cir. 1986); *Loloee*, 241 B.R. at 660-

4   62.  This Rule applies to matters involving the chapter 7 trustee's liability for breach of

5   fiduciary duty and breach of statutory duty.  *In re Rollins*, 175 B.R. at 73, (Trustee held

6   liable on the U.S. Trustee's motion only after the trustee expressly waived the procedural

7   protection of an adversary proceeding.) *See also e.g. In re Rigden*, 795 F.2d at 727.

8   While some courts have considered a request to surcharge the trustee in connection with

9   the trustee's motion to approve his final account (*See In re Charlestown Home*

10  *Furnishings*, 150 B.R. 226 (Bankr. E.D. Mo. 1993)), this court declines to do so here, in

11  the context of a two-party dispute between the Trustee and the Debtor.

12      When a party seeks relief through a contested matter that requires an adversary

13  proceeding, the court has three choices.  *In re Van Ness*, 2009 WL ___.  First, the court

14  could entertain the contested matter as a simple motion and grant only the relief that may

15  be granted in such motion, leaving it to the opposing party to file a subsequent adversary

16  proceeding if it desires different affirmative relief.  Second, the court could deny the

17  motion, or overrule the objection outright because it seeks relief in a procedurally

18  incorrect manner.  Third, the court can accept the procedurally incorrect request for relief

19  at face value and deem the contested matter to be an adversary proceeding under Rule

20  1001.  The choice among the alternatives is a matter of discretion with the court.  *Id.*

21      In this case, the court chooses the second alternative, to deny the surcharge relief.

22  To the extent that the Debtor seeks to recover damages for breach of fiduciary duty or

23  common-law negligence, Kavanagh is entitled to the procedural protections of an

24  adversary proceeding.  He is entitled to have the allegations against him properly pled in

25  compliance with the Federal Rules of Civil Procedure (made applicable to bankruptcy

26  proceedings by the Federal Rules of Bankruptcy Procedure).  He is entitled to formally

27  assert the numerous defenses alluded to in his response to the Objection, the foremost of

28  which will be the defenses of latches, waiver, and unclean-hands.  Kavanagh is entitled to

13

1  the benefit of formal discovery to properly develop all of the facts relevant to the
2  allegations against him.  Finally, he is entitled to defend those allegations in a trial, with
3  the protections afforded by the Federal Rules of Evidence.

4  **The Reasonableness of Kavanagh's Fees.**

5       The Debtor objects to Kavanagh's legal fees, but only in the context of his
6  argument that Kavanagh should be surcharged as discussed above.  The Debtor does not
7  point to any specific time entry, or any category of services performed by Kavanagh as
8  being unnecessary or not beneficial to aid the Trustee in the performance of his duties.
9  The court has reviewed each of Kavanagh's time records in light of the extensive amount
10 of work that was done in this case and can find no objective basis to disallow any of the
11 requested fees with the following exceptions:

12      June 18, 2004, through August 16, 2004:  During this period of time, the case was
13 in chapter 13 and Kavanagh was not the Trustee.  His billing records show 17.7 hours of
14 attorney and paralegal time spent during this period for a requested fee of $3,102.  While
15 Kavanagh may have had a desire to monitor the case during its brief journey to chapter
16 13, he did that out of personal interest.  He was not the Trustee and was not authorized to
17 incur legal fees to represent the Trustee during this time.  The court cannot find that these
18 fees were necessary and beneficial to the bankruptcy estate.

19      September 1, 2004: After the case was converted to chapter 13, Kavanagh filed a
20 final report and a motion for fees he had incurred prior to conversion.  Kavanagh made a
21 time entry for 0.5 hours ($100.00) for "projected" time to appear at a "final hearing on
22 fees."  However, the court's docket shows that the fee hearing never took place.  The
23 court predisposed a tentative denial of that motion as moot because the case had been
24 converted back to chapter 7 by the time of the hearing.  The court minutes do not show
25 that Kavanagh made an appearance at the scheduled hearing.  Accordingly, this fee will
26 be denied.

27 / / /
28 / / /

14

**Conclusion.**

Based on the foregoing, the court finds and concludes that Kavanagh's attorney fees in the amount of $75,505 were necessary, reasonable and beneficial to the bankruptcy estate. The balance of the fees requested in the amount of $3,202 will not be allowed. Kavanagh's request for reimbursement of costs in the amount of $431 will be approved. The Debtor's request to surcharge Kavanagh for alleged damages is procedurally inappropriate and will be denied.

Dated: January ___*30*___, 2009

W. Richard Lee
United States Bankruptcy Judge

15